GRIFFIN, Judge.
Sonny Daniel Anderson appeals from the final judgment and sentence imposed stemming from his convictions for perjury in an official proceeding[1] and providing false information in an application for bail.[2] Anderson asserts several errors on appeal, only one of which merits discussion.
The State charged Anderson by information as follows:
COUNT I
SONNY DANIEL ANDERSON on the 25th day of January, 1991, did then and there at an official proceeding, to-wit: Motion for Reduction of Bond and Motion for Pre-Trial Detention before the Honorable Aan A Dickey, Circuit Judge and relating to Seminole County Case Number A90-2191-CFA, while under oath make a false statement which he did not believe to be true in regard to a material matter, to-wit: that his lateness to court on October 8, 1990 which resulted in his being remanded to custody and a bond increase was due to his taking his girlfriend’s daughter, Desera Hollie, to the emergency room of the Central Florida Regional Hospital in Sanford, contrary to Sections 837.02 and 837.011, Florida Statutes,
COUNT II
AND ... SONNY DANIEL ANDERSON, on or about the 30th day of October, 1990,[3] did then and there in connection with an application for bail or modification of bail for the charge of Robbery, a second degree felony (Seminole County Case Number A90-2191-CFA), intentionally provide false information at a hearing before the Honorable Aan A. Dickey, Circuit Judge, on his Motion for Reduction of Bond, to-wit: that his lateness to court on *263 October 8,1990 which resulted in his being remanded to custody and a bond increase was due to his taking his girlfriend’s daughter, Desera Hollie to the emergency room of the Central Florida Regional Hospital in Sanford, and further that SONNY DANIEL ANDERSON knew or should have known that said information was to be used in connection with an application for or modification of bail and knew that said information was false, contrary to Section 903.035(1)(a) and 903.035(3), Florida Statutes....
At Anderson’s jury trial, the State introduced the transcript of the proceeding held on January 25, 1991, during which Anderson testified that the reason he was late for court on October 8, 1990, was because he took his girlfriend’s daughter to the hospital. The State also called Anderson’s girlfriend who testified that, although her daughter had been ill, Anderson had not taken her to the hospital before he arrived at the courthouse on October 8th. Anderson was convicted of perjury in an official proceeding and of providing false information in an application for bail, both third degree felonies. Anderson argues that he may not be convicted of both offenses. We agree and reverse.
This case is governed by the 1988 amendment to subsection 775.021(4), Florida Statutes (1991):
(4)(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial, (b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection
(1) to determine legislative intent. Exceptions to this rule of construction are:
1. Offenses which require identical elements of proof.
2. Offenses which are degrees of the same offense as provided by statute.
3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.
The hard part is figuring out what this statute means and how it applies to a given set of charged offenses.
The problem with this statute was well illustrated several years ago by Judge Altenbernd in Kurtz v. State, 564 So.2d 519, 522 (Fla. 2d DCA 1990). There the Second District Court was presented with the question whether, in light of the 1988 amendments to section 775.021(4), one death could support a conviction for both the crime of DUI manslaughter and culpable negligence manslaughter. Employing the above-quoted three-part test, as the Kurtz court understood it, yielded an affirmative answer — a result that seemed both illogical and contrary to the legislature’s intent. In Kurtz, the court had an advantage this court does not; it knew the correct answer — that one death would not support two homicide convictions — in spite of the formula.[4] The Kurtz court correctly rejected the results of an analysis which it knew had to be faulty, although it could not explain why the formula did not work.
In the present ease, as in Kurtz, application of the statutory framework for determining the propriety of two separate criminal convictions for one false statement does not yield an answer that comports with logic. Unfortunately, here there is no wealth of precedent comparable to that available to the Kurtz court on which we can confidently rely for the correct answer. We have found no instance where a person making one false statement to the court in the course of a bail modification hearing has been charged and convicted of both the felony of perjury in an official proceeding and the felony of providing false information in connection with an *264 application for a modification of bail. It may be that the problem lies in the phrase “offenses which are degrees of the same offense as provided by statute.” As is discussed in the dissent, the question this provision raises is what are degrees of the same offense and can two or more crimes be the same offense if the common core is not a crime.
That the common core shared by two offenses does not itself have to be a crime in order for the offenses to be degrees of the same offense is shown by the supreme court’s decisions in Goodwin v. State, 634 So.2d 157 (Fla.1994) and Thompson v. State, 20 Fla.L.Weekly S95 (Fla. Oct. 27, 1994). Because of the cryptic language used in section 775.021(4), the phrase “degrees of the same offense as provided by statute” has required construction. “Degrees of the same offense” is not limited to “third degree,” “second degree” or “first degree;” it appears to mean the scope or extent of crimes identified anywhere in the Florida Statutes that are essentially varieties of the same core offense. These are “degree factors” and they are different from “degrees of crime.” See also Sirmons v. State, 634 So.2d 153 (Fla.1994), State v. Chapman, 625 So.2d 838 (Fla.1993).
In Goodwin, the court held that vehicular homicide and unlawful blood alcohol level manslaughter (UBAL manslaughter) were “aggravated forms of a single underlying offense distinguished only by degree factors.” 634 So.2d at 157 (emphasis added). Yet, the only “core offense” shared by these two statutory crimes is hilling someone while operating a motor vehicle. Causing a death while operating a motor vehicle is not a crime in and of itself. Only the addition of the various aggravating factors listed in these statutes elevates such deaths to the status of a crime.[5]
Similarly, in the recent Thompson decision, the supreme court found that, based on a single sexual act, a defendant could not be convicted of sexual battery on a physically incapacitated victim in violation of section 794.011(4)(f), Florida Statutes (1991), and sexual activity while in custodial authority of a child in violation of section 794.041(2)(b), Florida Statutes (1991). The court held that the two offenses were “distinguished only by degree elements” within the meaning of Sir-mons and Goodwin.[6]
In this case, as well, there was no shared core crime. The two offenses shared only certain core conduct which, with the addition of certain additional factors, became these two crimes. The core offense involved in this case is the making of a false statement within the context of judicial proceedings. Florida has a number of these false statement offenses tailored to fit the circumstances of the making of the statement. It is made a crime to lie under oath in official[7] or unofficial[8] proceedings, to lie in seeking bail,[9] and to make false written declarations in certain documents which must be verified.[10] These *265 circumstances may or may not go to the seriousness of the offense, which is usually reflected in the degree ascribed to the crime. For example, perjury in official proceedings and lying in bail applications or modifications are deemed more serious than perjury in an unofficial proceeding, but, using this court’s description in Thompson v. State, 585 So.2d 492, 494 (Fla. 5th DCA 1991), adopted and approved in full, 607 So.2d 422 (Fla.1992), they are still “degrees (or more specific descriptions)” of the same offense within the meaning of section 775.021(4)(b)2.[11]
Even if the foregoing effort to find a path through the statute and case law is wrong, we conclude, as have many other appellate judges of this state, that the legislature “could not have intended” that by telling a single lie at a single hearing — that he was late for an earlier court appearance because he had to take his girlfriend’s child to the hospital — Anderson committed two third degree felonies. See Goodwin, 634 So.2d at 157-158 (Grimes, J., concurring); State v. Chapman, 625 So.2d 838, 839 (Fla.1993); Thompson, 585 So.2d at 494; Kurtz, 564 So.2d at 522-523. The legislature plainly intended to punish the making of a false statement in an official proceeding. It is only due to the overlap of these two statutes at the point where the false statement designed to gain release is made during sworn testimony in a bail hearing that both statutes apply. Even absent the rule of lenity, it does not appear to have been the legislature’s intent in enacting these statutes to transform this event of making one false statement into two discrete crimes. We accordingly vacate the conviction for violation of section 903.035(1)(a), Florida Statutes.
AFFIRMED in part; REVERSED in part.
PETERSON, J., concurs.
GOSHORN, J., dissents, with opinion.

. § 837.02, Fla.Stat. (1991).

. § 903.035, Fla.Stat. (1991).

.Although Count II of the information alleges a different date, the parties are agreed that the offense occurred on January 25, 1991 and that both charges arose out of the same conduct.

. In Kurtz, the court knew the right answer based on "many precedents over many years” that did comport with logic: one death equates to one homicide crime. 564 So.2d at 522.

. Vehicular homicide requires proof that the defendant killed someone while operating a motor vehicle in a reckless manner and that there be a causal relationship between that recklessness and the victim's death. Higdon v. State, 490 So.2d 1252 (Fla.1986). It does not require proof that the defendant was intoxicated. By contrast, UBAL manslaughter (or DUI manslaughter) requires proof that the defendant killed someone through simple negligence while operating an automobile under the influence of alcohol. Magaw v. State, 537 So.2d 564 (Fla.1989). It does not require proof of recklessness.

. The crime of sexual battery on a physically incapacitated victim requires the commission of a "sexual batteiy” (which is defined as oral, anal or vaginal penetration by, or union with, the sexual organ of another by any other object, but excluding an act done for a bona fide medical puipose) with a physically incapacitated victim twelve years of age or older without the victim's consent. The offense of sexual activity while in custodial authority of a child exists regardless of consent and requires the commission of "sexual activity” (which is defined the same as “sexual batteiy” except that the definition does not exclude an act done for a bona fide medical purpose) with a child twelve years of age or older but less than eighteen to whom one stands in a position of familial or custodial authority. The above-mentioned definition of “sexual batteiy” describes conduct that is neither a crime nor an offense.

. § 837.012, Fla.Stat. (1993).

. § 837.02, Fla.Stat. (1993).

. § 903.035, Fla.Stat. (1993).

. § 92.525, Fla.Stat. (1993).

. The bail offense involved here would appear to he a permissive lesser included offense of perjury in an official proceeding but for the happenstance that the underlying felony for which bail was sought was robbery, a second degree felony. It is an idiosyncrasy of this statute that it derives its degree from the degree of crime for which bad was sought. Thus, in this case the bail offense is a third degree felony, like the perjury offense. See § 903.035(3), Fla.Stat. (1989). Because of this oddity, even if our supreme court were to adopt Justice Kogan’s view that subsection (3) of section 775.021(4)(b) encompasses permissive lesser included offenses, which seems in keeping with the majority’s evolving degree factor analysis, the crimes charged in this case would not fall within the subsection, although "lesser” in the sense that one is subsumed within the other. See generally Sirmons, 634 So.2d at 154 (Fla.1994) (Kogan, J., concurring); Cave v. State, 613 So.2d 454, 456-57 (Fla.1993) (Kogan, J., concurring).